**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**JOHNNY LEE SADDLER**                                                        **PETITIONER**

**V.**                                                        **CAUSE NO. 1:21-CV-00160-SA-DAS**

**BURL CAIN and LYNN FITCH**                                                        **RESPONDENTS**

**<u>MEMORANDUM OPINON AND ORDER</u>**

     Petitioner Johnny Lee Saddler has filed a *pro se* habeas petition pursuant to 28 U.S.C. §

2254 challenging his State-court conviction and sentence for touching a child for lustful

purposes. Having considered the submissions of the parties, the State-court record, and the law

applicable to Petitioner's claims, the Court finds that the petition should be denied, for the

reasons that follow.

**<u>Relevant Facts</u>**

     The Mississippi Supreme Court accurately summarized the facts of the case as follows:

Thirteen-year-old Amy is Jessica Orr's aunt's daughter, but Amy has lived with Orr since
her birth due to her mother's death. Amy is a special needs child and has ADHD. On
September 2, 2016, Jessica Orr walked down the street to pick up her children, who had
been playing in the neighbor's pool. As Orr approached the house, she claims that she
saw Amy with Johnny Saddler. Orr stated, "Her pants were down. His pants were down.
Her shirt was up. He was not patting, he was fondling her breast, and his other hands was
inside her pants." The neighbor Tommy Shelton was present at the pool, but he did not
witness the alleged incident. Orr brought her children back home and called the police.

The responding officer was told by Saddler's probation officer to arrest Saddler. After a
few days, Saddler was interviewed by Investigator Mary Hudgins and Lieutenant Tony
Cooper. Hudgins advised Saddler of his Miranda rights, and Saddler indicated that he
understood them. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Hudgins then read the
waiver-of-rights form to Saddler and asked if he was willing to talk to her. Saddler signed
the waiver-of-rights form and agreed to speak with the investigators.

During the interview, Saddler first claimed that he never touched any of the children.
Saddler claimed that Orr was yelling as she approached and that she called him a sex
offender. However, Saddler eventually changed his story after further questioning.
Saddler stated, "I'm gonna leave it right there and let the courts decide. I didn't but I

did it. I gotta leave it, I gotta leave it at that." Saddler claims that his statement was an attempt to invoke his right to remain silent and his right to counsel. However, Saddler continued answering questions. When asked about his previous conviction for fondling, Saddler claimed that he had touched the victim in the previous case because "she was maturing and she was already, ah, she was flirty." When asked about the incident with Amy, Saddler admitted that after Amy rubbed his head, "I touched her. I pushed her away. I did touch her. And I touched her up here." Saddler continued, "Sure, I wanted to touch it . . . You know? I wanted to touch her, so I pushed her away by touching her tits." Cooper asked, "Your intent was to feel her but make it look like you were pushing her," and Saddler answered, "yeah." Saddler later explained, "young girls are just, they amaze me . . . when they begin to mature . . . I have that desire to want to touch them, but not interact in any other kind of way. I don't want to have sex with them or nothing like that."

The only other adult present, Tommy Shelton, did not have a clear view of the alleged incident. Shelton testified that he did not believe the incident occurred. Shelton further testified that he was unaware that Saddler had confessed.

*Saddler v. State*, 297 So. 3d 234, 236-37 (Miss. 2020) (footnotes omitted), *reh'g denied*, July 23, 2020.

## Procedural Posture

Petitioner Johnny Lee Saddler is currently in the custody of the Mississippi Department of Corrections and housed at the South Mississippi Correctional Institution located in Leakesville, Mississippi. Doc. # 7. On August 30, 2018, following a jury trial in the Circuit Court of Lowndes County, Mississippi, Saddler was convicted on one count of touching a child for lustful purposes. Doc. # 21-5, p. 69. The trial court subsequently entered a Sentencing Order on September 5, 2018, in which it found Saddler to be a "habitual offender" within the meaning of Mississippi Code Annotated § 99-39-83, and, consequently, sentenced Saddler to a term of life without the possibility of parole. Doc. # 21-5, p. 71.

Through counsel, Saddler filed a direct appeal challenging his conviction and sentence, raising three issues:

2

> (1) The trial court erred in denying Saddler's motion to suppress his statement because his invocation of the right to counsel was ignored.
>
> (2) Saddler's trial counsel was constitutionally ineffective.
>
> (3) The trial court erred in allowing the State to present improper lay opinion testimony.

Doc. # 21-2. The Mississippi Supreme Court affirmed Saddler's conviction and sentence on April 30, 2020. Doc. # 20-1; *Saddler v. State*, 297 So. 3d 234 (Miss. 2020). In its opinion, the Mississippi Supreme Court addressed all issues raised and found them to be without merit. *See id.* Saddler's motion for rehearing was denied on July 23, 2020. Doc. # 21-1, p. 3.

On May 20, 2021, Saddler, proceeding *pro se*, filed an "Application for Leave to Proceed in the Trial Court," along with his "Petition for Post-Conviction Collateral Relief" in the Mississippi Supreme Court. Doc. # 21-8, pp. 5-37. In his application, Saddler presented the following arguments:

> (1) Petitioner was convicted in violation [] of the United States Constitution laws and treaties[,] the Mississippi Constitution[,] and state laws by false imprisonment through perjury of the accuser[,] suppression of exculpatory evidence[,] the den[ial] [of] due process[,] [] equal protection of law[,] [and] an illegal coerced confession and sentence.
>
> (2) Petitioner was convicted in violation[] of the United States Constitution laws and treaties[,] the Mississippi Constitution[,] and state laws by denial of competent and effective assistance of trial counsel denying rights to testify in defense and denial of competent effective assistance of appellate counsel.

*See id.* On September 27, 2021, the Mississippi Supreme Court denied Saddler's application, finding, in pertinent part, as follows:

> In part, Saddler challenges his prior convictions which provided the basis for his habitual sentencing. He pled guilty in those cases and did not have an appeal. Any request for relief from those convictions should be initiated in the trial court. Miss. Code Ann. § 99-39-7. Saddler also argues that his confession should have been suppressed and that the evidence against him was insufficient. These claims were raised and rejected in the trial court and in the direct appeal or were capable of being decided in prior proceedings. These claims are barred at this point. Miss. Code Ann. § 99-39-21. Finally, the panel

finds that Saddler has not shown that his attorneys were ineffective under the standard set out in *Strickland v. Washington.*

Doc. # 20-2.

Saddler filed the instant *pro se* petition for federal habeas corpus relief on October 12, 2021. Doc. # 1. In said petition, Saddler asserts the following grounds for relief, as summarized by the court:

> Ground One: Saddler's confession was illegally coerced; Saddler's conviction was not supported by sufficient evidence; the trial court erred in taking into account his prior convictions when sentencing him as a habitual offender.

> Ground Two: Saddler's trial counsel and appellate counsel rendered constitutionally defective assistance of counsel.

Doc. #s 1, 7. Saddler avers that "[his] Petition is in time" and that "equitable tolling may apply," but that "no bar applies." Doc. # 7 at 13. On May 13, 2022, Respondents filed their response to Saddler's petition, arguing that his petition should be denied. Doc. # 20. Respondents specifically contend that two arguments raised in Ground One are procedurally barred from review and that the remaining claims are without merit. *Id.* Saddler filed his reply on May 26, 2022. Doc. # 22.

## **Procedural Bar**

The Court first considers two arguments raised by Saddler in Ground One. Saddler presented arguments challenging his prior convictions and the sufficiency of the evidence in his motion for post-conviction collateral relief. The Mississippi Supreme Court held that, because Saddler pled guilty on those convictions and, consequently, had no right to a direct appeal, he must initiate such proceedings in the trial court. The Mississippi Supreme Court further held this

claim and Saddler's claim challenging the sufficiency of the evidence to be procedurally barred under Miss. Code Ann. § 99-39-21(1).[1]

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal *habeas* is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Fifth Circuit has held Section 99-39-21(1) to be an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The adequacy of the bar applied to Petitioner's claims depends on "whether Mississippi has strictly or regularly applied it." *Id.* (citation omitted). Petitioner, however, bears "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Id.*

Saddler has not carried his burden of proof and shown an "inconsistent and irregular" application of the bar. *See Stokes*, 123 F.3d at 861. He has, therefore, defaulted these claims pursuant to an independent and adequate state procedural rule. Thus, the Court may review the merits of these claims only if Saddler can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For a finding of cause, "there must be something *external* to the petitioner, something that cannot fairly be attributed to him" which prevented him from raising and discussing the

---

[1] Section 99-39-21(1) of the Mississippi Code reads: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver."

claims as grounds for relief in state court. *Id.* at 753 (emphasis in original). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). To apply the fundamental miscarriage of justice exception, a petitioner must prove "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted). Further, he must support his allegations with new, reliable evidence, that was not presented at trial, and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 644 (citations omitted).

Saddler has not identified any external action which prevented him from presenting these claims to the trial court or on direct appeal. *See Coleman*, 501 U.S. at 750. Nor has he demonstrated any actual prejudice as a result of the imposition of this bar. Moreover, Saddler has not proven, that, as a factual matter, he did not commit the crime of touching a child for lustful purposes, nor has he presented any new, reliable evidence that would show that, "more likely than not [] no reasonable juror would have convicted him in light of the new evidence." *See Fairman*, 188 F.3d at 644. Accordingly, Saddler's claims challenging the use of his prior convictions in sentencing and the sufficiency of the evidence raised in Ground One are procedurally barred from federal habeas review.

## The Merits

Turning to Saddler's remaining claims, the Mississippi Supreme Court's merits determination limits this Court's authority to grant federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a federal court cannot grant federal habeas relief on any claim that the state court adjudicated on the merits unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

    Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case. *Id.* at 407. Under this standard, a state court's decision will not warrant federal habeas relief unless its application is both incorrect *and* unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### *Ground One-Right to Remain Silent and Confession*

In addition to the two claims addressed above, in Ground One Saddler argues that the trial court erred in denying his motion to suppress his confession because, he alleges, his confession was illegally obtained after he invoked his Fifth Amendment right to remain silent. Saddler seemingly contends that he invoked his right to remain silent once he made the following statement to law enforcement: "I'm going to leave it right there and let the courts decide. I didn't but I did it. I gotta leave it, I gotta leave it." *See Saddler*, 297 So. 3d at 238.

At trial, Saddler's counsel filed a Motion to Suppress Saddler's confession, arguing that Saddler had invoked his right to remain silent and, consequently, all statements made after must

be suppressed.  Doc. # 21-5, pp. 30-33.  The trial court held a hearing on the motion and heard

testimony from both officers present during Saddler's interview.  *See id.* at 34-36.  The officers'

testimony was summarized as follows:

> Both testified that they went over the Defendant's *Miranda* rights with him without any
> problems and that he signed the waiver of his rights.  As to the Defendant's statements
> during the interview that he wanted to "leave it," the officers testified that they did not
> construe this to mean he wished to invoke his right to remain silent, especially as the
> Defendant continued to talk afterwards.

*Id.* at 35.  In considering the "totality of the circumstances," the trial court ultimately denied

Saddler's motion to suppress after concluding that Saddler's statements that he "wished to 'leave

it' were highly ambiguous such that a reasonable person in those circumstances would not

properly construe this is an invocation of the Defendant's right to remain silent."  *Id.*

On direct appeal, the Mississippi Supreme Court likewise found Saddler's statement

insufficient to invoke his right to remain silent.  *Id.*  The state appellate court reasoned that this

statement "was not an unequivocal and unambiguous assertion of his rights," and applied United

States Supreme Court precedent which requires that the right be invoked *unambiguously.*

*Id.*(citing *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010)).  The state appellate court further

noted that while "it is good police practice for officers to ask clarifying questions," *see id. (*citing

*Moore v. State*, 287 So. 3d 905, 914 (Miss. 2019); *Holland v. State*, 587 So. 2d 848 (Miss.

1991)), there is no current precedent which *requires* an officer to ask clarifying questions after

such an ambiguous attempt at invocation of rights.  *Id.* at 239 (citing *Franklin v. State*, 170 So.

3d 481, 491 (Miss. 2015); *Barnes v. State*, 30 So. 3d 313, 318 (Miss. 2010)(citations omitted)).

The Mississippi Supreme Court concluded that "Saddler's statement was not an explicit

invocation of his right to remain silent," and further that "even if the statement was an

ambiguous assertion of his right to remain silent, the officer was not required to ask clarifying

questions." *Id.* Thus, the state appellate court held that the trial judge did not commit manifest error in denying Saddler's motion to suppress. *Id.*

Under current United States Supreme Court precedent, the same standard applies whether analyzing a *Miranda* right to counsel claim or *Miranda* right to remain silent claim. *See Berghuis*, 560 U.S. 370, 381. It is well-settled that a suspect may invoke his right to remain silent in any manner at any time before or during the interrogation, *see Miranda* 384 U.S. 436, but a valid and effective waiver of that right to remain silent, whether written or implicit, is sufficient to admit a suspect's statement into evidence. *North Carolina v. Butler*, 441 U.S. 369, 373-74 (1979). With regard to invoking the right to remain silent, the Supreme Court has stated:

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that "avoid[s] difficulties of proof and ... provide[s] guidance to officers" on how to proceed in the face of ambiguity.

*Berghuis*, 560 U.S. at 381 (citing *Davis v. United States*, 512 U.S. 452, 458-59 (1994)). In *Berghuis*, the accused did not ambiguously state that he wanted to remain silent nor that he did not want to talk to the police. *Id.* The *Berghuis* Court reasoned that, "[h]ad he made either of these simple, unambiguous statements, he would have invoked his "'right to cut off questioning,'" but as he did not, the right to remain silent had not been invoked. *Id.* (citing *Michigan v. Mosley*, 423 U.S. 96, 103 (1975)).

In the instant case, Saddler never unambiguously told officers that he wanted to remain silent nor that he did not want to talk to police. Instead, he continued answering questions even after making the aforementioned statement. Moreover, after officers advised Saddler of his *Miranda* rights, he signed a waiver of those rights.

In sum, Saddler has failed to carry his burden in overcoming the presumption of correctness afforded to the state court's findings of fact, that his confession was not coerced. *See*

*Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003). The record in this case, instead, reflects that law enforcement advised Saddler of his *Miranda* rights; he executed a voluntary waiver of those rights; and gave his statement knowingly and intelligently. Moreover, the law is clear that law enforcement was permitted to interview Saddler after he initiated contact with them and continued the conversation. *See Smith v. Illinois*, 469 U.S. 91, 95 (1984)(citing *Edwards v. Arizona*, 451 U.S. 477, 485, 486, n. 9 (1981)). Thus, the Court finds that federal habeas relief must be denied on this claim.

### *Ground Two: Ineffective Assistance of Counsel*

In Ground Two of his petition, Saddler contends that both his trial counsel and appellate counsel rendered ineffective assistance of counsel. In so arguing, Saddler asserts that trial counsel was ineffective due to failure to object in certain instances at trial, failure to properly investigate and subpoena witnesses, failure to file particular motions, and failure to show mitigating circumstances during sentencing. Saddler additionally opines, generally, that appellate counsel rendered incompetent and ineffective assistance of counsel.

Claims for ineffective assistance of counsel are governed by the standard set forth in *Strickland*,[2] which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas relief: (1) demonstrate constitutionally deficient performance by counsel, and (2) actual prejudice as a result of such ineffective assistance. The "deficiency" prong requires a showing that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88. A court's scrutiny must be highly deferential of counsel's performance, so as to "eliminate the distorting effects of hindsight." *Motley v. Collins*,

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

18 F.3d 1123, 1126 (5th Cir. 1994). Thus, courts review an attorney's decision based upon the facts and circumstances as they existed at the time. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1986). Moreover, there is a strong presumption that counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986).

Under the "prejudice" prong, the petitioner must demonstrate, to a reasonable probability, that the result of the proceedings would have been different but for the alleged conduct, or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995); *see also Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 112 (2011). An error by counsel, even if professionally unreasonable, does not warrant habeas relief if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986). There is no constitutional entitlement to error-free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981).

On habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington*, 562 U.S. at 105 ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The standard for ineffective assistance of counsel claims is "doubly deferential," *Knowles v.*

*Mirzayance*, 556 U.S. 111, 113 (2009), requiring district courts to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016).

Saddler first claims that trial counsel was ineffective in failing to object in three specific instances: (1) Saddler's "bogus habitual sentence"; (2) during the testimony of witness Jessica Orr; and (3) the prosecutors' closing arguments. Doc. # 1, pp. 24-26. The Mississippi Supreme Court rejected these claims on both direct appeal and during post-conviction review, holding that Saddler had failed to meet the *Strickland* standard. *See Saddler*, 297 So. 3d at 240-241; Doc. # 20-2. Initially, the Court notes that Saddler's arguments in this regard are substantively nothing more than conclusory allegations and such conclusory statements are insufficient to warrant habeas relief. *See Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002). Neither Saddler's conclusory statements nor the record indicate any deficient performance by trial counsel.

Even assuming, *arguendo*, that Saddler had demonstrated that trial counsel's failure to object in these instances did constitute as deficient performance, he has failed to show that he was actually prejudiced by the failure to object in these instances. With regard to Saddler's habitual sentence and prior convictions, the trial court took necessary precautions to ensure such evidence would not prejudice Saddler and gave a proper limiting jury instruction in which it made clear that such prior acts were "not part of the charged conduct in the case," and "should not be considered as proof of the Defendant's character or to show that he acted in conformity therewith." Doc. # 21-5, pp. 37-40, 51.

It is not entirely clear what in particular Saddler believes trial counsel should have objected to with regard to the testimony of Jessica Orr nor the prosecutor's closing arguments. As to witness Jessica Orr, trial counsel questioned her thoroughly during cross-examination and later called her as a witness for the defense. Doc. # 21-6, pp. 98-101, 147-151; Doc. # 21-7 pp.

12

1-6. And a review of the prosecutor's closing arguments reveal nothing that would unduly prejudice Saddler such as to contribute to the guilty verdict, especially in light of the evidence presented at trial. *See United States v. Johnston*, 127 F.3d 380, 390 (5th Cir. 1997). Moreover, Saddler does *not* argue, in the instant petition, that the prosecutor's comments during closing argument warrant habeas relief. Rather, he argues that defense counsel was ineffective in failing to object during the prosecutor's closing arguments. Nothing in the record indicates that counsel's failure to object during closing arguments affected the verdict in any way. In sum, the Court finds that Saddler has not carried his burden in either showing that trial counsel's failure to object in these instances constituted deficient performance nor that he was actually prejudiced by these failures.

Saddler's remaining claims for ineffective assistance of counsel were all raised on post-conviction review and denied by the Mississippi Supreme Court after finding that Saddler had failed to meet the *Strickland* standard. *See* Doc. # 20-2. The Court will discuss now discuss each of these claims separately.

First, Saddler argues that trial counsel was ineffective in failing to properly investigate the case and subpoena a witness(es). As to his contention that trial counsel should have subpoenaed a Mr. Sample and investigate a "Mexican woman," Saddler has not identified who these individuals are in relation to his case and that they would have actually testified, nor has he demonstrated how they could have, or would have, assisted in his defense. *See Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985).

Moreover, an attorney's decision to call or not call a particular witness falls within trial strategy and such decisions are afforded great deference. *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). Consequently, he has not shown that trial counsel's failure to subpoena

and/or investigate these individuals was deficient performance. Regarding trial counsel's alleged general failure to properly investigate, Saddler has not established what the hypothetical investigation would have revealed and how (if at all) it would have altered the outcome of the trial. *See United States v. Lewis*, 786 F.2d 1278 (5th Cir. 1986); *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982).

Saddler next opines that trial counsel was ineffective in allegedly failing to file a "motion for new trial and JNOV after trial." Doc. # 1, p. 25. This claim can be easily dispensed with as the record clearly shows that Saddler's trial counsel *did* file a " Motion for JNOV, or alternatively, a New Trial" on September 5, 2018, just six days after a Saddler's guilty verdict at trial. Doc. # 21-5, pp. 9, 73. Moreover, at the sentencing phase of trial, during which Saddler was present, his counsel stated affirmatively to the trial court that he would be filing a Motion for JNOV by the end of term. Doc. 21-7, pp. 77-78. Thus, this claim is clearly without merit.

Lastly with regard to trial counsel, Saddler asserts that his attorney was ineffective for "failing to mitigate extenuated circumstances" during sentencing. Doc. # 1, p. 25. Saddler's argument in this regard is wholly conclusory as he does not explain how trial counsel could have "mitigate[d] extenuating circumstances," nor how he was prejudiced by the alleged failure. Further, as noted above, it is well-established that such conclusory claims do not merit federal habeas relief. *See Collier*, 300 F.3d at 587.

Saddler also contends that his appellate counsel was constitutionally ineffective. As to this claim Saddler again alleges in largely conclusory fashion that his appellate attorney's performance was "incompetent and ineffective prejudicial," and further that his attorney "did not know the law and did not consult with Saddler prior to briefing." Doc. # 1, p. 25. Claims for ineffective assistance of appellate counsel are governed by the *Strickland* standard. ***See Evitts v.***

*Lucey*, 469 U.S. 387, 397-99 (1985). Appellate counsel is not obligated to raise every "colorable" claim on appeal but rather has some discretion in determining which issues should be raised and would more likely be successful. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1985). Saddler's appellate counsel filed a substantive appellate brief in which he raised three issues and fully briefed each issue. *See* Doc. # 21-2. Saddler has not identified what other issues should have been raised nor shown that any additional issues would have been successful.

Upon careful consideration of each of Saddler's arguments for ineffective assistance of counsel, the Court finds the claim is without merit Saddler has failed to show deficient performance by either trial counsel or appellate counsel. Even had he shown deficient performance by his attorneys, Saddler has likewise failed to demonstrate that he was prejudiced in any way by his counsel's alleged actions and/or inactions. As such, the Court finds that Saddler is not entitled to federal habeas relief on Ground Two.

## Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner, and Saddler must obtain a COA before appealing this Court's decision denying federal habeas relief. *See* 28 U.S.C. § 2253(c)(1). This Court may only grant a COA if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA for claims rejected on their merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order for a COA to issue. *Id.* Applying this standard, the Court concludes that a COA should be denied.

<u>**Conclusion**</u>

Based on the foregoing discussion, the Court finds that Saddler's claims challenging the use of his prior convictions and the sufficiency of the evidence are procedurally barred from review. The Court further finds that Saddler has failed to demonstrate that the State court adjudication of his remaining claims resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor that the decision was based on an unreasonable determination of facts in light of the evidence presented. Accordingly, habeas relief is **DENIED**, and Saddler's petition is hereby **DISMISSED WITH PREJUDICE**. The Court further **DENIES** a certificate of appealability. A separate judgment in accordance with this opinion and order will enter this day.

**SO ORDERED**, this the 25th day of August, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

16